### BROWN v. BROWN.

1. CLAIM—EXECUTORS AND ADMINISTRATORS.—A claim against the estate of a decedent must be supported on filing by an affidavit showing the consideration of the debt, and that it has not been paid by discount or otherwise.

2. SUPREME COURT—EQUITY CASE.—This Court in an equity case will, of its own motion, pass an order necessary for the protection of the rights of the parties before it.

3. ACCOUNT—EVIDENCE—MASTER—SURETIES.—The books of account kept by a master in his office are the best evidence of amounts due by him, and are admissible to prove claims against his official sureties.

Before TOWNSEND, J., Florence, November, 1894. Modified.

Action by William E. Brown and James H. Brown, as executors of John A. Brown, against the heirs at law of the deceased, for an accounting, calling in creditors, &c. The Circuit Judge disallowed the claims of the creditors of A. Q. McDuffie, as master, against the estate of Brown, who was surety for McDuffie. From this judgment the creditors of McDuffie appeal.

*Messrs. Johnson & Johnson,* *W. W. Sellers,* and *W. J. Montgomery,* for appellants.

*Mr. W. F. Clayton,* contra.

Oct. 21, 1895. The opinion of the Court was delivered by

MR. JUSTICE POPE. This case has been before this Court before (38 S. C., 173,) when it was remanded to the Circuit Court; orders were passed calling in the creditors of the estate of John A. Brown deceased, and an order was passed requiring J. D. McLucas, Esq., as master, to take and report

the testimony and claims.   No contest occurs as to any other matter than certain claims against the estate of John A. Brown, as surety to the official bond of A. Q. McDuffie, the immediate predecessor in the office of master for Marion County, in this State, of the said J. D. McLucas.   When these claims and the testimony upon which they were based came before his Honor, Judge D. A. Townsend, sitting as a chancellor, he expressed himself. thereon in his decree in these words: "As the master (J. D. McLucas) was the chief witness in regard to the claims against the estate of J. A. Brown, deceased, as surety on the bond of A. Q. McDuffie, as master, he did not pass upon said claims, but left that to the Court.   I am not at all satisfied with the proof made in regard to said claims, either as to the mode of proof or as to the sufficiency of the proof, and said claims are disallowed." It is apparent from the language of the Circuit Judge's decree that he regarded two matters in connection with this adjudication: first, the mode of proof; secondly, the sufficiency of proof.   His conclusions on these points are controverted by the appellants.   Let us, therefore, address ourselves to these two questions.

First. We hold that the Circuit Judge was correct in his first conclusion, being sustained both by reason and authority.   When a man dies, by the law of the land his property, real and personal, is made liable to the payment of his debts; while in life, if a suit in our courts was brought against him to recover a debt, proof would be required as to how such indebtedness arose, and an opportunity would be allowed the debtor to show that he had paid the debt or that he held claims to offset the same.   When a man is dead, and his estate is in a court of equity for settlement, and where creditors are required to come into that court and present their demands, would not reason and justice demand, now that the debtor cannot speak for himself to show that he had paid the debt or that he held set-offs against the same, that, in the first instance, the creditor should by affidavit show how the deceased debtor became

indebted to him, and also that, having become so indebted to him, such debt had not been paid by discount or otherwise? By this method of the law the creditor is said to purge his conscience. Authority in our State is direct and positive on this point. In *Ex parte Hanks*, Dud. Eq., 235, Chancellor (afterwards Chief Justice) Dunkin, as the organ of the Court of Appeals in equity, among other things, said: "In the course of the argument of the case at bar it seemed to be supposed that the creditor would not be obliged to make oath to the amount of his demand. If this practice exists, it is certainly irregular. According to the course of the English Chancery, when assets are to be administered, all claims, including judgments, etc., must be rendered on oath; and this is also the approved mode in this country. A creditor presenting his claim to the commissioner under notice should make an affidavit of the debt, and that he is aware of no discount, or, if there are mutual demands, a balance should be struck and sworn to. It need scarcely be remarked that this is not intended to supercede the necessity of the ordinary proof of the debt, but is suppletory thereto." So, too, in the case of *Westfield* v. *Westfield*, 13 S. C., 486, this Court said: "The practice on this subject has long been well defined and clearly stated. We think it should be followed as laid down by the courts of equity in the case of *Ex parte Hanks, supra.*" An examination of the subsequent case of *Crane* v. *Moses*, reported at pages 576, 577, of this same volume (13 S. C.), will show that it was not intended to, and does not, infringe upon the practice referred to in the two cases first cited. In the case at bar, as we understand the facts, these claims here contested were not presented on oath by the creditor, and no affidavit was made as to what payments, if any, had been made, or what discounts, if any, existed. It was this condition of these claims that caused the Circuit Judge to express his dissatisfaction. In this he was correct. It should be stated that if the law would demand these safeguards if the estate of the principal debtor, McDuffie, now deceased, was being

pursued, how much more force should attach to this objection now that the estate of Brown, the deceased surety, is being pursued? The exceptions on this point are overruled.

Second. It remains for us now to refer to the sufficiency of the proof offered to establish these claims. Before proceeding to examine this matter, we will remark that it may seem strange that this Court, having concurred with the Circuit Judge in holding that none of these claims have ever been properly presented under a call for the creditors of Brown, deceased, in this cause, should yet undertake to discuss the sufficiency of the proof offered to establish such claims. We do so because, in this case, it is manifest that some confusion may have arisen by appointing Mr. McLucas, the present master of Marion County, to receive claims, etc., against this estate. This worthy official refused in any way to pass upon these claims, on account of his official connection therewith as the successor of McDuffie, the preceding master. We would not be unmindful of our duty to remember that this is a Court of Equity, and, if any order passed by it should lead to endangering the rights of parties before it, prompt relief should, even of our own motion, be extended. With this view guiding us, we have determined to remand the cause to the Circuit Court, with directions that such claimants whose rights we are now considering shall be allowed sixty days from the filing of the *remittitur* in this case in the office of the clerk of the Circuit Court for Florence County, in this State, in which to present their respective claims against the estate of John A. Brown, deceased, showing in said affidavit the debt; what payments, if any, have been made upon their respective debts by A. Q. McDuffie, in his lifetime, or by any one for him; and, also, whether such respective claimants are in any wise indebted to the estate of the said A. Q. McDuffie, or that of the said John A. Brown, deceased.

On the second branch of the appeal, as to the sufficiency of the proof, we think the Circuit Judge erred in not admitting full force to the books and official records kept

by A. Q. McDuffie while master. We fear the case of *State* v. *Lake*, 30 S. C., 53, was not in his mind at the time he made his decision; for by that case it was held: "We do not think it was error to receive in evidence the records in the cases of *Hill* v. *Watson.* * * * One of the allegations was that Lake, during his term of office as clerk, officially received certain funds in the two cases first named, and *the records, including his own statements of the accounts therein, were the very best evidence of the alleged fact*" (italics ours). In the case just cited, his sureties were parties defendant with Lake, and at the trial they endeavored to prevent the introduction of the records, including his accounts kept by Lake as clerk, as required by law. This Court said such was proper evidence. Now, in the case at bar, the records and accounts as kept by A. Q. McDuffie are relied upon, in this suit against the estate of his surety, to establish certain defaults. The evidence is properly admissible, and it was error in the Circuit Judge to hold otherwise on this point.

It is the judgment of this Court, that so much of the judgment of the Circuit Court as held the claims not properly proved by the affidavit of the holders thereof on presentation to the master, be affirmed; and so much thereof as held the records and accounts offered in testimony as incompetent, be reversed; and the cause is remanded to the Circuit Court, with leave to the claimants in question, within sixty days after the remittitur is filed in the office of the clerk of the Circuit Court for Florence County, to present their respective claims as herein allowed; but upon failure to do so within the said sixty days, the Circuit Court is required to formulate a decree forever barring them, or any of them, so neglecting or refusing to present their claims, from any participation in the assets belonging to the estate of John A. Brown, deceased.